UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, Plaintiff, v. APPROXIMATELY $19,126 IN UNITED STATES CURRENCY, et al., Defendants. | Case No. 16-CV-06645-LHK **ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE.** Re: Dkt. No. 27 |
|---|---|

Plaintiff United States of America ("Plaintiff") filed a complaint for forfeiture against Defendants Approximately $19,126 in United States Currency (the "$19,126"), Approximately $17,000 in United States Currency (the "$17,000"), Approximately $2,900 in United States Currency (the "$2,900"), and a Silver 2014 Dodge Charger, VIN 2C3CDXCT2EH117330 (the "Vehicle") (collectively, "Defendant Properties"). Before the Court is Plaintiff's Renewed Motion for the Entry of a Default Judgment as to the Vehicle. ECF No. 29 ("Mot."). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and vacates the hearing scheduled for September 21, 2017. Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS Plaintiff's Renewed Motion for the

1

Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

Entry of a Default Judgment as to the Vehicle.

## I. BACKGROUND

### A. Factual Background

Plaintiff's complaint alleges the following facts. In March of 2016, David Villalobos was indicted by a federal grand jury for Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 846, and Use of a Communication Facility to Commit a Felony Drug Offense in violation of 21 U.S.C. § 843(b). ECF No. 1 ("Compl") ¶ 7. Villalobos is one of multiple defendants in *United States v. Avila-Carillo, et al.*, Case Number 16-CR-00125-LHK.

Between 2013 and 2016, Drug Enforcement Administration ("DEA") agents observed Villalobos picking up what the DEA agents "believed to be bags of methamphetamine from a residence they believed to be where methamphetamine was manufactured in Santa Clara, California." Compl. ¶ 8. Based on intercepted calls and surveillance, DEA agents believe that on January 10, 2015, Villalobos collected seven kilograms of methamphetamine from the alleged drug-manufacturing residence and brought it in a silver pick-up truck to Villalobos' residence at 1020 Elm Street, Apt. 23, San Jose, California. *Id.* ¶ 9.

On March 29, 2016, agents attempted to arrest Villalobos at 1020 Elm Street pursuant to a federal arrest warrant issued in the Northern District of California in the *Avila-Carillo* criminal proceedings. *Id.* ¶ 10. However, Villalobos no longer lived there.

In the rear parking lot of 1020 Elm Street, DEA agents found a 2007 Cadillac Escalade that was registered to Villalobos. *Id.* ¶ 12. Inside the 2007 Cadillac escalade, the DEA agents found a lease agreement signed by Villalobos for 279 Tradewinds Drive, Apt. 4, San Jose, California. *Id.* The agents also found an insurance card for a 2014 Dodge Charger at issue in the instant forfeiture case. *Id.*

The DEA agents then went to 279 Tradewinds Drive. *Id.* ¶ 13. The Vehicle was parked in a stall in the parking lot. *Id.* The DEA agents encountered Villalobos in the stairwell of the

2
Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

apartment building at 279 Tradewinds Drive. *Id.* ¶ 14. Villalobos was walking towards the parking lot where his wife, Liz Carrillo-Ramirez was waiting in a 2013 Nissan Sentra with two children. *Id.* The DEA agents arrested Villalobos. *Id.*

During a search incident to the arrest, DEA Special Agent Mallari found the $19,126 in Villalobos' pockets wrapped in several saran-wrapped bundles. *Id.* ¶ 15. The DEA agents obtained written consent from Liz Carrillo-Ramirez to search Apartment 4 of the apartment building at 279 Tradewinds Drive and the Vehicle. *Id.* ¶ 16. During the search of Apartment 4, the DEA agents found and seized 113.3 grams of crystal methamphetamine in a Ziploc bag in the kitchen and the $2,900 inside a safe in Villalobos' bedroom. *Id.* ¶ 17.

During the search of the Vehicle, the DEA agents found and seized the $17,000, which was wrapped in dark plastic and black duct tape and hidden under the carpet in the trunk of the vehicle. *Id.* ¶ 18. Liz Carrillo-Ramirez told the DEA agents that she and Villalobos both drove the Vehicle. *Id.* ¶ 22.

The $19,126, the $17,000, and the $2,900 were seized "as proceeds of narcotic transactions or monies used in the furtherance of narcotic trafficking" pursuant to 21 U.S.C. §§ 853 and 881(a)(6) (providing for forfeiture of "moneys . . . furnished by any person in exchange for a controlled substance"). *Id.* ¶ 23. The Vehicle was seized as a "vehicle used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance" pursuant to 21 U.S.C. §§ 853 and 881 (a)(4) (providing for forfeiture of "[a]ll conveyances, including . . . vehicles . . . intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment" of controlled substances). *Id.* ¶ 24.

### B. Procedural History

On November 16, 2016, Plaintiff filed the complaint in the instant forfeiture case. *See* Compl. The complaint alleges that the $19,126, the $17,000, and the $2,900 are subject to criminal forfeiture pursuant to § 881(a)(4), and that the Vehicle is subject to civil forfeiture pursuant to

3

§ 881(a)(6).

On November 17, 2016, Plaintiff filed a Notice of Forfeiture Action. ECF No. 3. On November 21, 2016, Plaintiff filed proposed warrants, ECF Nos. 6, 7, 8, and the Clerk issued warrants, ECF Nos. 9, 10, 11, 12, as to the $19,126, the $17,000, the $2,900, and the Vehicle.

On November 21, 2016, Plaintiff served Villalobos through his counsel, Steve Teich, and served Carrillo-Ramirez through her counsel, Robert Carey, Jr, with a copy of the Complaint for Forfeiture, the warrants, the Notice of Forfeiture, and other related documents. ECF No. 13.

After Plaintiff received notice that Villalobos and Carrillo-Ramirez were no longer represented by Teich and Carey, respectively, on December 5, 2016, Plaintiff served Villalobos and Carrillo-Ramirez through their new counsel, George Gigarjian. ECF No. 17. Plaintiff published the Notice of Forfeiture Action on an official government website, www.forfeiture.gov, for 30 consecutive days starting on November 23, 2016. ECF No. 18. On December 23, 2016, Plaintiff served Villalobos and Carrillo-Ramirez through Gargajian with proof of publication of the Notice of Forfeiture Action. ECF No. 19.

On December 29, 2016, Villalobos filed a claim of right to the $19,126, the $17,000, and the $2,900, but did not file a claim to the Vehicle. ECF No. 20 ("Claim"). On December 29, 2016, Villalobos filed an answer to the complaint for forfeiture. ECF No. 21 ("Answer").

On January 5, 2017, the Court granted the parties' stipulation to stay the instant case with respect to the $19,126, the $17,000, and the $2,900 during the pendency of *Avila-Carillo*, the related criminal case in which Villalobos is a Defendant. ECF No. 23. No stay was entered as to the Vehicle, which is subject to civil rather than criminal forfeiture.

On January 31, 2017, Plaintiff moved for entry of default as to the Vehicle. ECF No. 25. On February 1, 2017, the Clerk entered default as to the Vehicle. ECF No. 26. On February 7, 2017, Plaintiff filed a Motion for the Entry of a Default Judgment as to the Vehicle. *See* ECF No. 27. On May 19, 2017, the Court denied this motion without prejudice on the grounds that Plaintiff's motion for default judgment failed to address any of the factors outlined in *Eitel v.*

4

Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

*McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), which the Court must consider in determining whether default judgment is warranted. ECF No. 28, at 3.

On June 27, 2017, Plaintiff filed the instant Renewed Motion for the Entry of a Default Judgment as to the Vehicle. ECF No. 29. The time to file a response to Plaintiff's motion has passed.

## II. LEGAL STANDARD

### A. Default Judgment

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). The decision to enter a default judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("[A] district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[C]laims which are

legally insufficient[] are not established by default.")

**B.     Civil Forfeiture**

The United States filed this action under 21 U.S.C. §§ 881(a)(4) and (a)(6). Section 881(a)(4) provides that property "subject to forfeiture" includes "[a]ll conveyances, including . . . vehicles . . . intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment" of controlled substances. Moreover, § 881(a)(6) provides that property "subject to forfeiture" includes "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter[.]"

Forfeiture is "harsh and oppressive" and thus, is "not favored by the courts." *See United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994). The Ninth Circuit is "particularly wary of civil forfeiture statutes" because they "impose 'quasi-criminal' penalties" but do not provide property owners with the degree of procedural protections provided to criminal defendants. *See id.* at 1068; *United States v. Marlof*, 173 F.3d 1213, 1217 (9th Cir.1999) (quoting *$191,000.00 in U.S. Currency*, 16 F.3d at 1068). Accordingly, strict adherence to procedural rules is "paramount in forfeiture proceedings." *See Marlof*, 173 F.3d at 1217 (denying forfeiture where government "erred" by failing to provide due notice to property owner); *see also $191,910.00 in U.S. Currency*, 16 F.3d at 1068–69 (strictly construing currency forfeiture provisions of 19 U.S.C. § 1615 against government and holding that "the burden on the government to adhere to procedural rules should be heavier than on claimants"). Forfeiture proceedings are governed by the procedural rules found in Section G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* Fed. R. Supp. G. The Northern District of California's Admiralty and Maritime Local Rules 6-1, 6-2, and 6-3 provide additional procedural requirements regarding forfeiture actions.

**III.     DISCUSSION**

Plaintiff moves for entry of default judgment against the Vehicle. As discussed above, an

6

Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

analysis of a motion for default judgment requires the Court to (1) ensure that the Court has subject matter and personal jurisdiction over the defendant, (2) evaluate whether default judgment is appropriate under the *Eitel* factors, and (3) ensure that Plaintiff has followed the necessary procedural requirements, including the particular procedural requirements associated with forfeiture proceedings. The Court addresses each in turn.

### A. Subject Matter Jurisdiction, Venue, and Personal Jurisdiction

The Court has subject matter jurisdiction over the instant suit under 28 U.S.C. §§ 1345 and 1355(a), which vests district courts with original jurisdiction in "any action or proceeding for the . . . enforcement of any . . . forfeiture . . . incurred under any Act of Congress." 28 U.S.C. § 1355(a).

Personal jurisdiction and venue is proper for forfeiture actions in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). In the instant case, Defendant Properties were seized in San Jose, in the Northern District of California, and all alleged criminal activity that rendered the Defendant Properties forfeitable occurred in the Northern District of California. *See* Compl. ¶¶ 8–9 (describing criminal activity in Santa Clara and San Jose, California). Thus, personal jurisdiction and venue are proper in the Northern District of California.

### B. *Eitel* Factors

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over Defendant Properties is appropriate, the Court now turns to the *Eitel* factors to determine whether entry of default judgment is warranted.

#### 1. First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant. Absent a default judgment, Plaintiff in this case "will likely be without recourse or recovery" to obtain the Vehicle. *United States v. $86,496.00 in U.S. Currency*, 2008 WL 2687141, at *2 (D. Ariz. July 2, 2008). Thus, the first

7

Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

factor weighs in favor of granting default judgment.

**2. Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in the complaint. These two factors are often analyzed together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.,* 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true."). The Court will therefore consider the merits of Plaintiff's claims and the sufficiency of the complaint together.

Plaintiff's claim is for civil forfeiture of the Vehicle pursuant to 21 U.S.C. § 881(a)(4). The relevant provisions of § 881(a) are as follows:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.
>
> (2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance or listed chemical in violation of this subchapter.
>
> . . .
>
> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).

. . .

> (9) All listed chemicals, all drug manufacturing equipment, all tableting
> machines, all encapsulating machines, and all gelatin capsules, which have
> been imported, exported, manufactured, possessed, distributed, dispensed,
> acquired, or intended to be distributed, dispensed, acquired, imported, or
> exported, in violation of this subchapter or subchapter II of this chapter.

Thus, § 881(a)(4), the provision at issue in the instant case, provides for the forfeiture of vehicles that are used to transport or facilitate the sale of controlled substances, including the ingredients and equipment used to manufacture controlled substances, which are described in paragraphs (1), (2), and (9).

Accepting the allegations in the complaint, there is probable cause to believe that the Vehicle was used to facilitate the sale of controlled substances. The Ninth Circuit's decision in *United States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1186 (9th Cir. 1995), is instructive. In *One 1986 Ford Pickup*, the government sought forfeiture of a vehicle that a drug dealer named Sanders had used to pick up and transport monetary proceeds of a drug transaction that had taken place on the other side of the country. *Id.* at 1183–84. The Ninth Circuit noted that "[n]othing in the language or purpose of section 881(a)(4) suggests a vehicle used to transport a participant to a meeting to receive and carry away the proceeds of an earlier distribution is beyond the reach of the statute." *Id.* at 1186. The Ninth Circuit recognized that § 881(a)(4) did not by its terms provide for the forfeiture of vehicles transporting money, but the Ninth Circuit nevertheless stated that "this fact [does] not preclude forfeiture under section 881(a)(4) if the automobile was used to 'facilitate' a drug transaction by transporting drug money." *Id.* at 1186 n.5.

The Ninth Circuit held that the critical question in determining forfeiture under § 881(a)(4) was whether "the government had probable cause to believe there was a 'substantial connection' between Sanders's use of his pickup and the sale of controlled substances." *Id.* at 1187. The Ninth Circuit then held that "[d]istribution of the proceeds of the transaction obviously has a 'substantial

9

connection' to the sale of controlled substances—indeed, it is an essential and integral part of that process." *Id.* Thus, the Ninth Circuit concluded, "absent some reason to doubt . . . the source of the money, the government clearly had probable cause to believe Sanders's use of the truck had a 'substantial connection' to the sale of drugs." *Id.*

Other courts have also found that transportation or presence of money connected to a drug transaction in a vehicle can be sufficient to "facilitate the . . . sale" of controlled substances and thus render a vehicle forfeitable. *See United States v. $639,470.00 U.S. Currency*, 919 F. Supp. 1405, 1418 (C.D. Cal. 1996) ("[T]he fact that claimant was driving the defendant vehicle and that it contained the currency found to be drug proceeds constitutes sufficient grounds for forfeiture of the vehicle."); *United States v. One 1973 Volvo*, 377 F. Supp. 810, 812 (W.D. Tex. 1974) (finding that vehicle was forfeitable because it was used to transport money to pay for shipments of marijuana and to pay for renting airplane to fly marijuana from Mexico); *United States v. One 1951 Oldsmobile Sedan Model 98*, 126 F. Supp. 515, 516 (D. Conn. 1954) ("[T]he use of the car as a place of payment two days after the delivery of the narcotics is sufficient to constitute the use of the car to facilitate the transportation or sale of narcotic drugs.").

In the instant case, the complaint alleges that before Villalobos's arrest, Drug Enforcement Administration (DEA) officers observed Villalobos acting as a drug and money courier for methamphetamine using "various vehicles" on "numerous occasions." Compl. ¶ 8. DEA agents also believe that on January 10, 2015, Villalobos transported seven kilograms of methamphetamine and brought it in a silver pick-up truck to Villalobos's residence at 1020 Elm Street in San Jose, CA. *Id.* ¶ 9. DEA agents then attempted to arrest Villalobos at 1020 Elm Street, but Villalobos no longer lived there.

In the rear parking lot of 1020 Elm Street, DEA agents found a 2007 Cadillac Escalade that was registered to Villalobos. *Id.* ¶ 12. Inside the 2007 Cadillac escalade, the DEA agents found a lease agreement signed by Villalobos for 279 Tradewinds Drive, Apt. 4, San Jose, California. *Id.* The agents also found an insurance card for the Vehicle.

The DEA agents then went to 279 Tradewinds Drive. *Id.* ¶ 13. The Vehicle was parked in a stall in the parking lot. *Id.* The DEA agents encountered Villalobos in the stairwell of the apartment building at 279 Tradewinds Drive. *Id.* ¶ 14. Villalobos was walking towards the parking lot where his wife, Liz Carrillo-Ramirez was waiting in a 2013 Nissan Sentra with two children. *Id.* The DEA agents arrested Villalobos. *Id.*

During a search incident to the arrest, DEA Special Agent Mallari found the $19,126 in Villalobos' pockets wrapped in several saran-wrapped bundles. *Id.* ¶ 15. The DEA agents obtained written consent from Liz Carrillo-Ramirez to search Apartment 4 of the apartment building at 279 Tradewinds Drive and the Vehicle. *Id.* ¶ 16. During the search of Apartment 4, the DEA agents found and seized 113.3 grams of crystal methamphetamine in a Ziploc bag in the kitchen and the $2,900 inside a safe in Villalobos' bedroom. *Id.* ¶ 17.

During the search of the Vehicle, Special Agent Mallari found "$17,000.00 in U.S. Currency, which was wrapped in dark plastic and black duct tape and hidden under the carpet in the trunk of the [V]ehicle." ECF No. 1, ¶¶ 13, 18. Carrillo-Ramirez told agents that both she and Villalobos drove the Vehicle. *Id.* ¶ 22. At the time of the search of the Vehicle, the Vehicle was parked outside of Villalobos's residence, "where approximately 113 grams of crystal methamphetamine was seized concurrently." ECF No. 29, at 4; Compl. ¶ 17. Additionally, Villalobos was later indicted for selling controlled substances. *See* Case No. 16-CR-00125, ECF No. 1. Villalobos is scheduled to enter a guilty plea on September 12, 2017. Case No. 16-CR-00125-LHK-4, ECF No. 111.

These facts are more than sufficient to demonstrate "probable cause to believe there was a 'substantial connection'" between the use of the Vehicle and a controlled substances transaction. *Id.* at 1187. The fact that the $17,000 was wrapped in plastic and black duct tape and hidden beneath the carpet in the Vehicle clearly indicates an intention to conceal the money, which is "an essential and integral part of that process" of a controlled substances transaction. *Id.*; *see also United States v. One 1970 Pontiac GTO, 2-Door Hardtop*, 529 F.2d 65, 65 (9th Cir. 1976) ("[T]he

11

statute does not limit forfeiture to transportation situations."); *One 1986 Ford Pickup*, 56 F.3d at 1186 ("It would be inconsistent with this broad language and purpose to read into section 881(a)(4) a technical definition of 'sale' which viewed the transaction as necessarily complete at the time the drugs changed hands."). 21 U.S.C. § 881(a)(4) requires only probable cause to believe that the Vehicle "*in any manner* . . . facilitate[d] the . . . sale" of controlled substances. Furthermore, Carrillo-Ramirez informed officers that Villalobos drove the vehicle, and Villalobos had been observed using various vehicles to transport drugs and money connected to several drug transactions. Compl. ¶¶ 8, 22.

As in *One 1986 Ford Pickup* and other cases, these facts establish probable cause to believe that the Vehicle had a "substantial connection" to a drug transaction and that the Vehicle "was used to 'facilitate' a drug transaction . . . ." 56 F.3d at 1186 n.5. The concealment of money in the Vehicle was an "integral part" of the business of drug dealing. *Id.* at 1187. Thus, under 21 U.S.C. § 881(a)(4), it is clear that there was probable cause to believe that the Vehicle was used "in any manner to facilitate" the sale of controlled substances, thus rendering the Vehicle forfeitable. Therefore, the Court finds that the second and third *Eitel* factors favor entry of default judgment.

### 3. Fourth *Eitel* Factor

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 U.S. Dist. LEXIS 100237, at *33 (N.D. Cal. Mar. 22, 2007), *adopted by* 2007 WL 1545173 (N.D. Cal. May 29, 2007). Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the potential loss caused by the defendant's actions. *See id.*

The estimated value of the Vehicle is approximately $18,000. ECF No. 29, at 5. Although

12

Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

this is a significant amount of money, $18,000 "is reasonably proportionate to the harm cause by [Villalobos's] actions . . . ." *Walters v. Statewide Concrete Barrier, Inc.*, 2006 U.S. Dist. LEXIS 66440, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006). Villalobos has been indicted for conspiring to distribute 500 or more grams of methamphetamine, and Villalobos is scheduled to enter a guilty plea on September 12, 2017. Case No. 16-CR-00125-LHK-4, ECF No. 111. In light of the seriousness of the crime, a civil forfeiture valued at approximately $18,000 is reasonably proportionate to the harm caused by Villalobos's actions. Thus, the fourth *Eitel* factor favors granting the motion for default judgment.

#### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case. In the instant case, Villalobos has filed a claim regarding several other properties subject to forfeiture, but neither Villalobos nor anyone else filed a claim regarding the Vehicle. Therefore, given this default, the Court takes the allegations in the Amended Complaint as true. *Fair Hous.*, 285 F.3d at 906. In this posture, the Court finds that disputes of material facts are unlikely.

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect. As Plaintiff states in the motion for default judgment, "On November 21, 2016, the United States gave notice of this action directly to the only parties who reasonably appeared to be potential claimants by serving David Angel Villalobos and Liz Carrillo-Ramirez, through counsel, Steve Emery Teich and Robert E. Carey, Jr., with a copy of the Complaint for Forfeiture and related documents at their last known addresses." ECF No. 29, at 2; *see also* ECF No. 13. Subsequently, after learning that Carrillo-Ramirez and Villalobos were represented by new counsel, George Jacob Gigarjian, Plaintiff gave proper notice to Gigarjian on December 5, 2016. ECF No. 17 (Certificate of Service). Nothing in the record before the Court indicates that this notice was improper. Nevertheless, despite this notice, and despite the fact that Villalobos and Ramillo-Camirez have made claims to other properties subject to forfeiture in the instant case, no claim has been made as to the Vehicle. Nothing before the Court suggests that the failure to file a

13
Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

claim as to the Vehicle was the result of excusable neglect.

The fifth and sixth *Eitel* factors thus favor entry of default judgment.

### 5. Seventh Eitel Factor: Policy Favoring Decision on the Merits

While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014). Although Carrillo-Ramirez and Villalobos are aware of the instant case and have filed claims as to other properties subject to forfeiture, no claim has been filed as to the Vehicle. Thus, the likelihood of the case proceeding to a resolution on the merits is unlikely. The Court finds that the seventh *Eitel* factor is outweighed by the other six factors that favor default judgment. *Id.* at *9 (seventh *Eitel* factor outweighed by remaining six factors where defendants failed to appear for over a year and a half prior to the default judgment).

### C. Procedural Requirements in Forfeiture Cases

Forfeiture proceedings are governed by the procedural rules found in Section G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* Fed. R. Supp. G. The Northern District of California's Admiralty and Maritime Local Rules 6-1, 6-2, and 6-3 provide additional procedural requirements regarding forfeiture actions. Before granting a motion for default judgment, a court must ensure that these procedural requirements have been met. *See* Supp. R. G; *see also Marlof*, 173 F.3d at 1217 (denying forfeiture where government "erred" by failing to provide due notice to property owner); *$191,910.00 in U.S. Currency*, 16 F.3d at 1068–69 (strictly construing currency forfeiture provisions of 19 U.S.C. § 1615 against government and holding that "the burden on the government to adhere to procedural rules should be heavier than on claimants").

Supplemental Rule G and the Local Rules provide that a Court may enter default judgment if due notice of the action for forfeiture has been given in accordance with the rules, no one has

14

Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

appeared to file responsive pleadings, and no one has filed a verified statement of right of possession or ownership interest in the property. As discussed below, the Court finds that each of these requirements is met in the instant case.

First, Plaintiff gave proper direct notice in the instant case. As discussed above, "On November 21, 2016, the United States gave notice of this action directly to the only parties who reasonably appeared to be potential claimants by serving David Angel Villalobos and Liz Carrillo-Ramirez, through counsel, Steve Emery Teich and Robert E. Carey, Jr., with a copy of the Complaint for Forfeiture and related documents at their last known addresses." ECF No. 27, at 2; *see also* ECF No. 13 (Certificate of Service). Subsequently, after learning that Carrillo-Ramirez and Villalobos were represented by new counsel, George Jacob Gigarjian, Plaintiff gave proper notice to Gigarjian on December 5, 2016. ECF No. 17 (Certificate of Service).

Plaintiff also gave proper notice to the public by "posting notice on an official government web site for 30 consecutive days beginning on December 23, 2016." *Id.* at 3; *see also* Supp. Rule G(4)(a); ECF No. 18 (Proof of Publication). This notice contained all information required under Supplemental Rule G. Despite both direct notice to Carrillo-Ramirez and Villalobos and general notice to the public, no one has filed a statement of right of possession or ownership interest, an answer, or any responsive pleading regarding the Vehicle.

The Clerk issued an arrest warrant for the Vehicle on November 21, 2016, ECF No. 12, and entered default on February 1, 2017, ECF No. 26. *See* Supp. R. G(3)(b). Additionally, the Court has reviewed Plaintiff's complaint and found that it complies with the requirements of Supplemental Rule G(2), for the reasons discussed above. *See supra* Part A–B (discussing jurisdiction and the contents of the complaint).

Therefore, the Court finds that the procedural requirements of Section G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and the Northern District of California's Admiralty and Maritime Local Rules 6-1, 6-2, and 6-3 are met in the instant case. Thus, because the Court has jurisdiction, the *Eitel* factors favor granting the

15
Case No. 16-CV-06645-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR THE ENTRY OF A DEFAULT JUDGMENT AS TO THE VEHICLE

motion for default judgment, and the procedural requirements for forfeiture actions are met, the Court finds that default judgment is warranted in the instant case.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment as to Defendant Silver 2014 Dodge Charger, VIN 2C3CDXCT2EH117330.

**IT IS SO ORDERED.**

Dated: September 8, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge